UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CYNTHIA A. CONSTANTINO-GLEASON,

|  |  |  |
|---|---|---|
| | Plaintiff, | Civil Action No.: |
| against | | |
| STATE OF NEW YORK UNIFIED COURT SYSTEM, NEW YORK STATE OFFICE OF COURT ADMINISTRATION, HON. CRAIG J. DORAN, Individually and in his Official Capacity as District Administrative Judge of the Seventh Judicial District, HON. TERESA D. JOHNSON, Individually and in her Official Capacity as Supervising Judge of City Courts in the Seventh Judicial District, and KAY-ANN PORTER CAMPBELL, ESQ., Individually and in her Official Capacity as Managing Inspector General for Bias Matters, | | **COMPLAINT** |
| | | **JURY TRIAL DEMANDED** |
| | Defendants. | |

_____

Plaintiff, CYNTHIA A. CONSTANTINO-GLEASON, by her attorney Joseph A.

DeTraglia, Esq., P.C., as and for her Complaint against Defendants STATE OF NEW YORK

UNIFIED COURT SYSTEM, NEW YORK STATE OFFICE OF COURT

ADMINISTRATION, HON. CRAIG J. DORAN, Individually and in his Official Capacity as

District Administrative Judge of the Seventh Judicial District, HON. TERESA D. JOHNSON,

Individually and in her Official Capacity as Supervising Judge of City Courts in the Seventh

Judicial District, and KAY-ANN PORTER CAMPBELL, ESQ., Individually and in her Official

Capacity as Managing Inspector General for Bias Matters, alleges as follows:

## NATURE OF ACTION

1.  This action is a civil action for injunctive relief and damages caused by Defendants'

violation of Plaintiff's constitutional and statutory rights secured by the Civil Rights Act of

1871, 42 U.S.C. § 1983 ("§ 1983"), Defendants' violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), and Defendants' violation of the New York State Human Rights Law, N.Y. Exec. L. § 290 *et seq*. ("NYSHRL").

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1343(3) and 1343(4), and 42 U.S.C. § 2000e *et seq*., and has supplemental jurisdiction over Plaintiff's State law claims pursuant to 28 U.S.C. § 1367 because they arise from the same nucleus of operative facts as her federal claims.

3.    Venue in this Court is proper under 28 U.S.C. § 1391(b) because Plaintiff resides in this District and a substantial part of the events giving rise to the claims occurred in this District.

4.    Plaintiff timely filed a complaint of discrimination and retaliation with the New York State Division of Human Rights ("NYSDHR") which was dually filed with the United States Equal Employment Opportunity Commission ("EEOC"). Plaintiff received a right to sue notice from the EEOC on January 21, 2021, within ninety (90) days from the filing of this Complaint, which followed her receipt from NYSDHR of a Determination of Probable Cause issued in her favor as well as a Dismissal for Administrative Convenience allowing Plaintiff to pursue her State law claims in this federal action.

## PARTIES

5.    Plaintiff is a citizen of the United States of America and a resident of the County of Monroe and State of New York.  At all times relevant to this Complaint, Plaintiff was an employee of Defendants State of New York Unified Court System ("UCS") and New York

2

State Office of Court Administration ("OCA") within the meaning of Title VII, 42 U.S.C. § 2000e(f).

6. Defendants UCS and OCA were at all times relevant to this Complaint governmental entities created and authorized under the laws of the State of New York.

7. At all times relevant to this Complaint, Defendants UCS and OCA were employers within the meaning of Title VII, 42 U.S.C. § 2000e(b), and were governmental entities acting under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of New York.

8. Defendants UCS and OCA failed to prevent and/or caused the violations set forth in this Complaint.

9. Defendants UCS and OCA failed to adequately train their employees to prevent and/or correct the violations set forth in this Complaint, and failed to adequately supervise their employees to prevent and/or correct the violations set forth in this Complaint.

10. Defendant Hon. Craig J. Doran ("Hon. Doran" or "Judge Doran") is a citizen of the United States and a resident of the State of New York. At all times relevant to this action, Judge Doran was an elected Supreme Court Justice appointed to the position of UCS District Administrative Judge for the Seventh Judicial District, and was a policy maker for administrative and employment related matters in the Seventh Judicial District. Hon. Doran is sued in his individual capacity and, for injunctive relief, in his official capacity.

11. Judge Doran was personally involved in the violations set forth in this Complaint.

12. On information and belief, Judge Doran engaged in a pattern of statutory violations as set forth in this Complaint, and aided and abetted the violations set forth in this Complaint.

3

13. Defendant Hon. Teresa D. Johnson ("Hon. Johnson" or "Judge Johnson") is a citizen of the United States and a resident of the State of New York. At all times relevant to this action, Judge Johnson was an elected Rochester City Court Judge appointed by District Administrative Judge Doran to the title of UCS Supervising Judge of City Courts in the Seventh Judicial District, and was a policy maker for administrative and employment related matters in the Seventh Judicial District. Hon. Johnson is sued in her individual capacity and, for injunctive relief only, in her official capacity.

14. Judge Johnson was personally involved in the violations set forth in this Complaint.

15. On information and belief, Judge Johnson engaged in a pattern of statutory violations as set forth in this Complaint, and aided and abetted the violations set forth in this Complaint.

16. Kay-Ann Porter Campbell, Esq. ("Ms. Campbell") is a citizen of the United States and, on information and belief, a resident of the State of New York. On information and belief, at all times relevant to this action, Ms. Campbell served as Managing Inspector General for Bias Matters in the UCS Office of Inspector General, and was a policy maker for administrative matters in the UCS Office of Inspector General. Ms. Campbell is sued in her individual capacity and, for injunctive relief only, in her official capacity.

17. On information and belief, Ms. Campbell was personally involved in the violations set forth in this Complaint.

18. On information and belief, Ms. Campbell engaged in a pattern of statutory violations as set forth in this Complaint, and aided and abetted the violations set forth in this Complaint.

## **FACTS**

19. In 2008, Plaintiff applied to work for UCS, pursuant to announcement no. 07723, following a successful 20 year career as an attorney in private practice in Rochester, New York.

20. In April 2008, UCS and OCA hired Plaintiff into the position of Principal Court Attorney at Judicial Grade 31 ("JG-31") on the salary schedule for nonjudicial employees.

21. Plaintiff has always performed successfully as an employee of Defendants.

22. From April 2008 to the present, Plaintiff has remained an employee of UCS, and has never been hired by a Judge of the UCS or employed as a personal appointment to a UCS Judge.

23. During her employment with Defendants, Plaintiff has always received positive performance reviews from the UCS Judges to whom she has been assigned and for whom she has provided services.

24. Between April 2008 and August 2012, Plaintiff was assigned to work for Seventh Judicial District Administrative Judges Tom VanStrydonck and Hon. Craig J. Doran, who succeeded Judge VanStrydonck as Administrative Judge after serving as Supervising Judge of Monroe County Family Court, as well as for several various Supreme, County and Family Court Judges at the Hall of Justice in Rochester, New York.

25. On information and belief, the District Administrative Judge for the Seventh Judicial District is responsible for supervising and managing the courts within the Seventh Judicial District, including decision-making authority for nonjudicial employee assignments.

26. Between April 2008 and August 2012, Plaintiff was also appointed to serve as a Court Attorney - Referee and served in Domestic Violence Court in Rochester, New York.

27. Between April 2008 and August 2012, Plaintiff remained an employee of UCS and was not hired by a Judge of the UCS or employed as a personal appointment to a UCS Judge.

28. In August 2012, Administrative Judge Doran assigned Plaintiff to work in Rochester City Court at the same pay grade (JG-31) and compensation structure for Hon. John Schwartz,

who was a Rochester City Court Judge, Supervising Judge of City Courts in the Seventh

Judicial District, and Acting County Court Judge.

29.     Plaintiff continued in this assignment until December 31, 2013.

30.     Plaintiff remained an employee of UCS and was never hired by Judge Schwartz or

employed as a personal appointment to Judge Schwartz.

31.     On or about January 1, 2014, upon Judge Schwartz's retirement, Administrative Judge

Doran assigned Plaintiff to work in City Court with Rochester City Court and Acting

County Court Judges John Elliott and Melchor Castro.

32.     Plaintiff remained an employee of UCS and was never hired by Judge Elliott or Judge

Castro or employed as a personal appointment to either Judge Elliott or Judge Castro.

33.     From January 1, 2014 to the present, Plaintiff has worked in a capacity referred to by

Defendants as a "pool attorney" in Rochester City Court.

34.     As a Rochester City Court pool attorney, Plaintiff is required to provide services to any

City Court or other Judge to whom she is assigned work.

35.     As of January 1, 2014 and continuing through the present, Administrative Judge Doran has

appointed Judge Johnson to the title of Supervising Judge of the City Courts in the Seventh

Judicial District.

36.     On information and belief, the Supervising Judge of the City Courts in the Seventh Judicial

District is authorized to supervise and manage the City Courts within the Seventh Judicial

District, including Rochester City Court nonjudicial employee assignments.

37.     UCS has promulgated policies prohibiting bias, discrimination and retaliation in

employment which include a process instructing employees to bring complaints informally

to their supervisor or to the Administrative Judge in that Judicial District, or formally to the UCS Office of the Inspector General.

38.  While assigned to Judge Castro, Plaintiff was forced to endure a hostile work environment involving repeated harassing, demeaning, and inappropriate behavior based on her sex.

39.  Plaintiff first complained to Judge Johnson, Judge Doran, and human resources personnel for UCS and OCA about Judge Castro's discriminatory and hostile behavior in early January 2014, and made repeated complaints throughout her assignment to Judge Castro up to and including in the month of December 2017.

40.  Prior to December 2017, Judges Doran and Johnson failed to follow UCS policies, report Plaintiff's complaints in accordance with UCS policies, conduct an investigation into Plaintiff's complaints, or take remedial steps to eliminate the hostile work environment endured by Plaintiff.

41.  Upon speaking with Administrative Judge Doran about Judge Castro's conduct toward Plaintiff, Judge Doran admonished Plaintiff for reporting Judge Castro's actions and instructed Plaintiff not to contact him again regarding Judge Castro's conduct.

42.  Upon speaking with Supervising Judge Johnson about Judge Castro's conduct toward Plaintiff, Judge Johnson repeatedly advised Plaintiff that she "needed to make it work" and that no reassignment would be made.

43.  Upon speaking with human resources representatives from OCA, including Amy Fields, Plaintiff was asked whether she intended to resign her employment in order to avoid further concerns with Judge Castro's behavior toward her.

44. Plaintiff's personnel file contains no records of complaints concerning Judge Castro that Plaintiff made to Judge Doran, Judge Johnson, or OCA human resources representatives, and contains no records of any investigations into Plaintiff's complaints.

45. On December 14, 2017, Plaintiff was subjected to aggressive behavior by Judge Castro that permanently damaged their working relationship.

46. Plaintiff immediately reported the December 14, 2017 incident involving Judge Castro to Judge Johnson and to Judge Elliott.

47. On December 17, 2017, Judge Castro, in referring to the December 14, 2017 incident between Plaintiff and himself, made a specific request to Supervising Judge Johnson "that this matter be referred to the Judicial Conduct Commission."

48. Neither Judge Johnson nor Judge Doran ever referred this matter to the Judicial Conduct Commission.

49. On December 19, 2017, Judge Johnson summoned Plaintiff to her office for a meeting while simultaneously assuring Plaintiff that Judge Castro would not be present at their meeting that day.

50. On December 19, 2017, upon arriving in Judge Johnson's office as instructed, Plaintiff was made to feel very uncomfortable because Judge Castro was present in the office along with Judge Johnson, and Plaintiff was required to confront Judge Castro face to face.

51. On December 19, 2017, Judge Castro apologized to Plaintiff for certain aspects of his conduct on December 14, 2017.

52. On December 19, 2017, Plaintiff again requested that Judge Johnson assign Plaintiff to a Judge other than Judge Castro.

53. In December 2017, Judge Elliott suggested to Judge Johnson that Plaintiff's complaints concerning Judge Castro could be remedied by assigning Plaintiff to Acting County Court Judge Caroline Morrison who also hears cases in Monroe County Drug Treatment Court, a Court in which Plaintiff had work experience during her career with UCS.

54. Plaintiff was not assigned to Judge Morrison in December 2017.

55. By letter dated January 3, 2018, Judge Castro apologized in writing to Plaintiff for calling her "a piece of [expletive]" but for nothing else.

56. Judge Castro sent copies of his January 3, 2018 letter to Hon. Johnson, Hon. Doran, and Hon. Michael V. Coccoma, a Deputy Chief Administrative Judge of UCS.

57. On information and belief, the Judicial Conduct Commission was never notified of Plaintiff's complaints against Judge Castro.

58. As of January 6, 2018, Plaintiff was no longer assigned to work for Judge Castro.

59. Throughout 2018, Plaintiff was not assigned to Judge Morrison but took on additional duties in Rochester City Court and in Monroe County Drug Treatment Court while continuing her assignment to Judge Elliott.

60. In January 2018, another Rochester City Court pool attorney, who was male, was assigned to work for Judge Castro.

61. The male Court Attorney proceeded to work for Judge Castro without incident until Judge Castro's retirement in December 2018.

62. Judge Castro's retirement effective December 31, 2018 provided Defendants with an effective opportunity to retaliate against Plaintiff for complaining about Judge Castro.

63. Effective January 1, 2019, upon Judge Castro's retirement, Defendants chose to assign Plaintiff to Rochester City Court Judge Michael C. Lopez in addition to Judge Elliott.

64. On information and belief, Judge Doran and Judge Johnson made the decision to assign Plaintiff to Judge Lopez.

65. Upon assigning Plaintiff to Judge Lopez, Defendants reduced Plaintiff's job title and pay grade to JG-29 beginning January 1, 2019, purportedly on the basis that Judge Lopez was not an Acting County Court Judge like Judge Elliott.

66. Plaintiff remained an employee of UCS and was not hired by Judge Elliott or Judge Lopez or employed as a personal appointment to either Judge Elliott or Judge Lopez.

67. Despite 11 years of exemplary service, Plaintiff was demoted two pay grade levels from JG-31 to JG-29, and her annual salary and benefits of employment were decreased considerably beginning on January 1, 2019.

68. Plaintiff believes her pay grade was reduced from JG-31 to JG-29 because she complained about working in a hostile environment for Judge Castro based on her sex.

69. But for Plaintiff's complaint against Judge Castro, Plaintiff would have continued to receive compensation at pay grade JG-31 to this day.

70. In approximately November 2018, Plaintiff became aware that Rochester City Court and Acting County Court Judges Caroline Morrison and Maija Dixon were each without a court attorney assigned to them.

71. In 2019, Plaintiff became aware that Judge Johnson was without a court attorney assigned to her.

72. Plaintiff sought to be assigned to Judge Morrison, Judge Dixon or another Acting County Court Judge in addition to Judge Elliott in order to continue receiving compensation at pay grade JG-31 on and after January 1, 2019.

73. Alternatively, Plaintiff sought to be assigned to both Judge Morrison and Judge Dixon in order to continue receiving compensation at pay grade JG-31 on and after January 1, 2019.

74. In November 2018, after learning there was a vacant Court Attorney position which was being assigned to Judges Morrison and Dixon, Plaintiff expressed her interest in the position to Judge Johnson.

75. In November 2018, Plaintiff was directed by Judge Johnson not to apply for the vacant Court Attorney position which was being assigned to Judges Morrison and Dixon.

76. Defendants declined to assign Plaintiff to Judge Morrison, Judge Dixon or to any other Acting County Court Judge in retaliation for complaining about Judge Castro.

77. Defendants filled the vacant court attorney position assigned to Judges Morrison and Dixon by hiring an individual from outside of the Court System with little City Court experience and then paying that individual at salary grade JG-31, two pay grades above Plaintiff's grade which had been lowered by Defendants effective January 1, 2019.

78. On information and belief, Plaintiff's qualifications were superior to the individual hired into this vacant JG-31 position.

79. On information and belief, at the end of 2018, only five or fewer Court Attorneys assigned to work for the UCS in Rochester, New York were paid at grade JG-29, while 42 other court attorneys assigned to work for the UCS in Rochester, New York were paid at grade JG-31.

80. In December 2018, Plaintiff applied in writing for UCS/OCA announcement no. 7810, Court Attorney - Referee for Monroe County Court ("UCS/OCA job posting no. 7810"), a vacant position at salary grade JG-31.

81. In 2019, Plaintiff's job application for this position was rejected by Defendants.

82. On information and belief, Judge Doran and Judge Johnson played a role in Defendants' decision not to hire Plaintiff into this position.

83. Plaintiff was not offered an interview for this position.

84. Eight individuals other than Plaintiff were offered an interview for this position.

85. On information and belief, Judge Doran and Judge Johnson played a role in Defendants' decision not to offer Plaintiff an interview for this position.

86. On information and belief, Judge Doran was involved in appointing members of the hiring selection panel for UCS/OCA job posting no. 7810.

87. The hiring selection panel, or "interview panel," for this position included Judge Johnson, Nicole Botti, Esq., Judge Matthew Rosenbaum, Anthony Rossi, Esq., Assistant Deputy Counsel in the Deputy Chief Administrative Judge Office of Courts Outside New York City, and Barbara Zahler-Gringer, Esq., OCA Counsel for Administration.

88. Prior to the posting of UCS/OCA no. 7810, Nicole Botti, Esq. had been personally appointed by Judge Doran to be Judge Doran's Principal Law Clerk.

89. Prior to the posting of UCS/OCA no. 7810, Judge Rosenbaum had been personally appointed by Judge Doran to Judge Doran's leadership team as Supervising Judge of Civil Courts in the Seventh Judicial District.

90. This vacant position, UCS/OCA no. 7810, was filled by an attorney outside the Court System with minimal Court experience.

91. On information and belief, Plaintiff's qualifications were superior to the individual hired into the position.

92. Judge Johnson decided not to select Plaintiff for an interview for this position.

93. On information and belief, Nicole Botti, Esq. decided not to select Plaintiff for an interview for this position in consultation with Judge Doran.

94. On information and belief, Judge Rosenbaum decided not to select Plaintiff for an interview for this position in consultation with Judge Doran.

95. On information and belief, Anthony Rossi, Esq. and Barbara Zahler-Gringer, Esq. voted in favor of offering Plaintiff an interview for the position.

96. A majority of votes on the five-person panel, or a total of three votes, was needed for an applicant to be selected for an interview for the position.

97. On information and belief, based on the vote result of three votes against offering Plaintiff an interview for the position and two votes in favor of offering Plaintiff an interview, Judge Johnson cast the deciding vote against offering Plaintiff an interview.

98. On January 29, 2019, four individuals interviewed for the position.

99. Prior to January 29, 2019, at least four other individuals declined the opportunity to interview for the position.

100. Plaintiff was informed in a January 10, 2019 letter from the Seventh Judicial District Executive that "…it was not possible to personally interview" Plaintiff for this position.

101. By letter dated February 5, 2019, Judge Doran advised Deputy Chief Administrative Judge Michael V. Coccoma of "[o]ur first choice" for the position by writing to Judge Coccoma "[o]n behalf of the interview Panel."

102. Plaintiff was not selected for an interview for this position in retaliation for complaining about Judge Castro.

103. Additionally, Plaintiff was not hired into this position in retaliation for complaining about Judge Castro.

104. Defendants chose to continue paying Plaintiff at pay grade JG-29 throughout 2019 and continuing through the present in retaliation for complaining about Judge Castro.

105. Since January 1, 2019, Plaintiff has been assigned to work not only for Judge Elliott and Judge Lopez, but also for Judge Johnson, Judge Morrison, Judge Dixon, Judge Thomas R. Morse, and Judge Stephen T. Miller, all of whom are Acting County Court Judges, including Judge Lopez who had been granted Acting County Court status to hear matters in Monroe County Drug Treatment Court.

106. Plaintiff was not hired into this position or selected for an interview for this position in retaliation for complaining about Judge Castro.

107. In May 2019, Plaintiff applied in writing for UCS/OCA job posting no. 1920, Court Attorney - Referee for Alternative Dispute Resolution, a vacant position at grade JG-31.

108. Plaintiff's job application for this position was rejected by Defendants.

109. On information and belief, Judge Doran and Judge Johnson played a role in Defendants' decision not to hire Plaintiff into this position.

110. Plaintiff was not offered an interview for this position.

111. On information and belief, Judge Doran and Judge Johnson played a role in Defendants' decision not to offer Plaintiff an interview for this position.

112. This position was filled by an attorney from outside the Court System.

113. On information and belief, Plaintiff's qualifications were superior to the employee selected for this position.

114. Plaintiff was not selected for an interview for this position in retaliation for complaining about Judge Castro.

115. Additionally, Plaintiff was not hired into this position in retaliation for complaining about Judge Castro.

116. In May 2019, Plaintiff applied in writing for UCS/OCA job posting no. 54902, Principal Court Attorney, a vacant position at salary grade JG-31.

117. Plaintiff's job application for this position was rejected by Defendants and Plaintiff was not offered an interview for this position.

118. On information and belief, Judge Doran and Judge Johnson played a role in Defendants' decision not to hire Plaintiff into this position or offer Plaintiff an interview for this position.

119. On information and belief, Plaintiff's qualifications were superior to the individual selected for this position.

120. In 2019, Plaintiff requested that Defendants place her on a rotation to hear arbitration matters in Rochester City Court like other Court Attorneys similar to her.

121. In September 2019, Judge Doran denied Plaintiff's request to be placed on an arbitration panel in Rochester City Court.

122. Had Plaintiff been allowed by Defendants to hear arbitration matters on a rotating basis like her fellow Court Attorneys, her pay grade could have been restored to JG-31.

123. When Plaintiff's longevity of service is taken into account, Defendants pay Plaintiff less than fellow Court Attorneys who are Rochester City Court "pool attorneys" in retaliation for complaining about Judge Castro.

124. On information and belief, during 2018 and 2019, while reducing Plaintiff's pay grade from JG-31 to JG-29, Defendants simultaneously created and proceeded to fill positions for other UCS Court Attorneys so as to allow them to obtain or maintain JG-31 status.

125. During 2018 and 2019, Defendants created no positions for Plaintiff so as to allow her the opportunity to return to JG-31 status after 11 years of exemplary service.

126. From January 1, 2019 to the present, Defendants have appointed Judge Lopez as an Acting County Court Judge on a temporary basis but not on a longer-term basis which would enable Plaintiff to be restored to JG-31 status.

127. Defendants denied Plaintiff the opportunity to continue receiving pay at grade JG-31 from January 1, 2019 through the present in retaliation for complaining about Judge Castro.

128. UCS and/or OCA have promulgated policies prohibiting bias, discrimination and retaliation in UCS employment which include a complaint process administered by the UCS Office of the Inspector General.

129. Pursuant to a promulgated Policy and Procedure of the UCS concerning discrimination:

> "Retaliation against you for reporting acts of discrimination or providing information relevant to a claim of discrimination is in violation of UCS policy, state and federal laws (as well as some local laws). Examples of forms of retaliation may include termination of employment, a demotion with a decrease in wage or salary, a significant loss of benefits, or a transfer. If you believe that someone has retaliated against you, you may raise the issue with an Anti-Discrimination Panel member or file a separate claim of retaliation with the Office of the Inspector General."

130. Pursuant to Defendants' policies, in September 2019 Plaintiff filed a written complaint of retaliation against Judge Doran and the Seventh Judicial District Executive with the UCS Office of the Inspector General.

131. Under Defendants' policies, the UCS Office of the Inspector General is required to notify the complainant by acknowledging receipt of the complainant's complaint, investigate the complaint, and prepare a report.

132. On information and belief, the Office of the Managing Inspector General for Bias Matters within the UCS Office of the Inspector General is charged with acknowledging receipt of

complaints, investigating allegations of discrimination and retaliation that affect the UCS
workplace or affect the terms and conditions of employment of UCS personnel, and
preparing a report.

133. The Office of the Managing Inspector General for Bias Matters never acknowledged
receipt of Plaintiff's September 2019 complaint filed with the UCS Office of the Inspector
General ("UCS Inspector General").

134. Having not heard anything regarding her complaint filed with the UCS Inspector General,
in February 2021 Plaintiff contacted the UCS Inspector General in writing concerning the
status of her complaint.

135. After still not hearing anything regarding her complaint filed with the UCS Inspector
General, in March 2021 Plaintiff contacted the UCS Inspector General's office by
telephone concerning the status of her complaint.

136. On information and belief, all complaints submitted to the UCS Inspector General are
referred back to the Judicial District where they originated.

137. On information and belief, Plaintiff's complaint was referred back to Judge Doran, who
determined Plaintiff's complaint to be without merit and asked that no investigation be
conducted into Plaintiff's complaint.

138. No investigation was ever conducted by the UCS Inspector General into Plaintiff's
complaint, and Plaintiff has never received any information from the UCS Inspector
General concerning her complaint.

139. It is a public concern that complaints filed with the UCS Inspector General be investigated
or at least acknowledged in order for the public to have faith and confidence in the State of

New York's judicial branch of government and to ensure effective working conditions for the State Judiciary's employees who serve the citizens of New York State.

140. Ms. Campbell deprived Plaintiff of her federal rights by failing to acknowledge or investigate the complaint that Plaintiff filed with the UCS Office of Inspector General.

141. Ms. Campbell acted under color of state law when failing to acknowledge or investigate the complaint that Plaintiff filed with the UCS Office of Inspector General.

142. Unless enjoined, Ms. Campbell will continue to deprive Plaintiff of her federal rights.

143. Judge Doran and Judge Johnson deprived Plaintiff of her federal rights by retaliating against her for complaining about Judge Castro.

144. Judge Doran and Judge Johnson acted under color of state law when retaliating against Plaintiff for complaining about Judge Castro.

145. Unless enjoined, Judge Doran and Judge Johnson will continue to deprive Plaintiff of her federal rights.

146. From November 2018 through the present, Defendants have retaliated against Plaintiff for complaining of sex discrimination and/or otherwise engaging in legally protected acts.

147. Defendants' acts of retaliation have been performed with malice or reckless indifference to Plaintiff's protected civil rights, entitling her to an award of punitive damages.

148. Because of Defendants' actions, Plaintiff has experienced humiliation, emotional distress, mental anguish, physical illness, economic hardship and inconvenience, damage to her career and reputation, loss of past and future earnings, retirement and other employment benefits, and other incidental and consequential damages and expenses.

149. Injunctive relief is warranted to remedy Defendants' continuing violations of Plaintiff's protected civil rights.

**FIRST CLAIM:**
**RETALIATION (VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT)**

150. Plaintiff repeats and realleges the previous allegations as if fully set forth herein.

151. Defendants UCS and OCA have violated Title VII of the Civil Rights Acts of 1964, as amended, 42 U.S.C. § 2000e, by retaliating against Plaintiff for complaining of sex discrimination and/or otherwise engaging in legally protected acts.

**SECOND CLAIM:**
**RETALIATION (VIOLATION OF NEW YORK HUMAN RIGHTS LAW)**

152. Plaintiff repeats and realleges the previous allegations as if fully set forth herein.

153. Defendants Hon. Doran, Hon. Johnson and/or Ms. Campbell have violated the New York Human Rights Law, New York Executive Law § 296, as amended, by retaliating against Plaintiff for opposing discrimination.

**THIRD CLAIM:**
**AIDING AND ABETTING IN RETALIATION (VIOLATION OF NEW YORK HUMAN RIGHTS LAW)**

154. Plaintiff repeats and realleges the previous allegations as if fully set forth herein.

155. Defendants Hon. Doran, Hon. Johnson and/or Ms. Campbell have aided and abetted in the unlawful retaliation of Plaintiff in violation of the New York Human Rights Law, New York Executive Law § 296, as amended.

**FOURTH CLAIM:**
**DEPRIVATION OF RIGHTS UNDER THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983**

156. Plaintiff repeats and realleges the previous allegations as if fully set forth herein.

157. Defendants Hon. Doran and Hon. Johnson and/or Ms. Campbell have violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by their selective disparate treatment of Plaintiff and/or by retaliating against Plaintiff for complaining of sex discrimination and/or otherwise engaging in legally protected acts.

## FIFTH CLAIM:
## DEPRIVATION OF RIGHTS UNDER THE RIGHT TO PETITION CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983

158. Plaintiff repeats and realleges the previous allegations as if fully set forth herein.

159. Defendant Ms. Campbell has violated the Right to Petition Clause of the First Amendment to the United States Constitution by failing to acknowledge or investigate the complaint Plaintiff filed with the UCS Office of Inspector General in September 2019.

## JURY DEMAND

160. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

a. Declare that Defendants unlawfully retaliated against Plaintiff on the basis of her opposition to sex discrimination;

b. Enjoin Defendants from unlawfully retaliating against current or future employees of Defendants including Plaintiff;

c. Enjoin Defendants from failing to acknowledge or investigate current or future discrimination or retaliation complaints filed with the UCS Office of Inspector General;

d.  Direct Defendants to reinstate Plaintiff to her previous level of compensation and benefits with prejudgment interest;

e.  Award Plaintiff damages to make her whole for economic hardship and inconvenience including back pay and other lost compensation as well as retirement and all other benefits to which Plaintiff is entitled, with prejudgment interest;

f.  Award Plaintiff compensatory damages to fully compensate her for the injuries caused by Defendants' unlawful conduct including but not limited to damages for humiliation, emotional distress, mental anguish, physical illness, and pain and suffering;

g.  Award Plaintiff damages for harm to her career and reputation, and all actual, incidental and consequential actions arising from Defendants' unlawful conduct;

h.  Award Plaintiff reimbursement for negative tax consequences resulting from a judgment in her favor;

i.  Award Plaintiff punitive damages;

j.  Award Plaintiff reasonable attorneys' fees, costs and disbursements, and expert witness fees;

k.  Award Plaintiff such other and further relief as this Court deems equitable and just.


Dated: April 16, 2021                    Respectfully submitted,

                                         s/Joseph A. DeTraglia
                                         Attorney for Plaintiff
                                         Joseph A. DeTraglia, Esq., P.C.
                                         421 Broad Street, Suite 10
                                         Utica, NY 13501
                                         (315) 790-8822
                                         jd@detraglialawfirm.com