UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



————————————————————

CYNTHIA A. CONSTANTINO-
GLEASON,

              Plaintiff,                                    21-CV-6327 (JLS)

     v.

STATE OF NEW YORK UNIFIED
COURT SYSTEM, NEW YORK STATE
OFFICE OF COURT
ADMINISTRATION, HON. CRAIG J.
DORAN, Individually and in his
Official Capacity as District
Administrative Judge of the Seventh
Judicial District, HON. THERESA D.
JOHNSON, Individually and in her
Official Capacity as Supervising Judge
of City Courts in the Seventh Judicial
District, and KAY-ANN PORTER
CAMPBELL, ESQ., Individually and in
her Official Capacity as Managing
Inspector General for Bias Matters,

              Defendants.

————————————————————

## DECISION AND ORDER

Plaintiff Cynthia A. Constantino-Gleason brings this action pursuant to Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C.

§ 1983, and the New York State Human Rights Law, N.Y. Exec. L. § 290 *et seq.*

("NYHRL"). *See* Dkt. 11. She asserts claims under those statutes against

Defendants State of New York Unified Court System ("UCS"), Office of Court

Administration ("OCA"), Hon. Craig J. Doran ("Doran"), Hon. Theresa D. Johnson

("Johnson"), and Kay-Ann Porter Campbell, Esq. ("Campbell"). Plaintiff sues Doran, Johnson, and Campbell in their individual and official capacities, *see id.* ¶¶ 10, 13, 16, seeking various forms of relief. *See id.* at 22-23.

Before the Court is Defendants' partial motion to dismiss all but the first cause of action in the Amended Complaint. *See* Dkt. 13. For the reasons discussed below, Defendants' motion (Dkt. 13) is GRANTED in part and DENIED in part. Specifically, Defendants' motion is granted as to (1) Plaintiff's official capacity claims against Doran, Johnson, and Campbell for monetary damages and injunctive and declaratory relief that is not prospective, based on 11th Amendment immunity; and (2) Plaintiff's official capacity Section 1983 claims, for *all* forms of injunctive and declaratory relief, based on *res judicata*. Defendants' motion is otherwise denied.

## PROCEDURAL HISTORY

Plaintiff commenced this action on April 16, 2021. Dkt. 1. Defendants moved to dismiss on August 6, 2021. Dkt. 8. While Defendants' motion was pending, Plaintiff filed an Amended Complaint. Dkt. 11.[1] On September 10, 2021, Defendants moved to dismiss the Amended Complaint pursuant to Fed. R. Civ. P.

---

[1] In light of the filing of the Amended Complaint, the Court denies Defendants' initial motion to dismiss (Dkt. 8) as moot. *See Dikambi v. City Univ. of New York*, No. 19-CV-9937 (RA), 2020 WL 6875060, at *2 (S.D.N.Y. Nov. 23, 2020) ("When a plaintiff amends her complaint pending a motion to dismiss, the Court has the discretion to either deny the motion as moot or consider the merits of the pending motion in light of the amended complaint.").

12(b)(1) and 12(b)(6).  Dkt. 13.  Plaintiff opposed the motion, and Defendants replied.  Dkt. 16, 19.  Plaintiff filed a sur-reply.  Dkt. 21.

## THE AMENDED COMPLAINT[2]

Plaintiff, Cynthia A. Constantino-Gleason, is "an employee of UCS."  Dkt. 11 ¶ 22.  She was first hired "into the position of Principal Court Attorney" in 2008.  *Id.* ¶ 20.  Between 2008 and 2012, she was assigned to work with "various Supreme, County and Family Court Judges at the Hall of Justice in Rochester, New York."  *Id.* ¶ 24.  She was also "appointed to serve as a Court Attorney-Referee and served in the Domestic Violence Court."  *Id.* ¶ 26.  From 2012 to 2013, Constantino-Gleason worked in Rochester City Court with "Hon. John Schwartz."  *Id.* ¶ 28-29.

From January 2014 to the present, Plaintiff has worked as a "pool attorney" in Rochester City Court.  *Id.* ¶ 33.  As a "pool attorney," she is "required to provide services to any City Court or other Judge to whom she is assigned to work."  *Id.* ¶ 34.  In or around January 2014, Constantino-Gleason was assigned to work with "Rochester City Court and Acting County Court Judges John Elliott and Melchor Castro."  *Id.* ¶ 31.

While assigned to work with Judge Castro, Plaintiff was allegedly "forced to endure a hostile work environment involving repeated harassing, demeaning, and inappropriate behavior based on her sex."  *Id.* ¶ 38.  She "first complained" about "Judge Castro's discriminatory and hostile behavior" in "early January 2014."  *Id.* ¶

---

[2] This section contains a summary of the Amended Complaint.  For a full recitation of the facts alleged in the Amended Complaint, *see* Dkt. 11.

39.  Specifically, she allegedly complained to Defendant Doran (UCS District Administrative Judge for the Seventh Judicial District), Defendant Johnson (UCS Supervising Judge of City Courts in the Seventh Judicial District), and "human resources personnel for UCS and OCA." *Id.* ¶ 39.[3]  In addition, Plaintiff allegedly "made repeated complaints throughout her assignment to Judge Castro." *Id.* According to Plaintiff, Doran and Johnson "failed to follow UCS policies, report Plaintiff's complaints in accordance with UCS policies, conduct an investigation into Plaintiff's complaints, or take remedial steps to eliminate the hostile work environment endured by Plaintiff." *Id.* ¶ 40.

On December 14, 2017, Constantino-Gleason was allegedly subjected to "aggressive behavior by Judge Castro" that "permanently damaged their working relationship." *Id.* ¶ 45.  She allegedly reported the incident to Johnson and Judge Elliott, *id.* ¶ 46, but the matter was never "referred" to the "Judicial Conduct Commission." *Id.* ¶ 48.  Plaintiff ceased working for Judge Castro as of January 6, 2018. *Id.* ¶ 58.

According to Plaintiff, from "November 2018 through the present, Defendants have retaliated against" her "for complaining of sex discrimination and/or otherwise engaging in legally protected acts." *Id.* ¶ 157.  She alleges that Doran and Johnson decided to "assign Plaintiff to Judge Lopez" in January 2019—thereby "reduc[ing] Plaintiff's job title and pay grade." *Id.* ¶¶ 63-65.  She claims that the reduction in

---

[3] Plaintiff alleges that Doran and Johnson were "policy maker[s] for administrative and employment related matters in the Seventh Judicial District." *Id.* ¶¶ 10, 13.

pay was "because she complained about working in a hostile environment for Judge Castro based on her sex." *Id.* ¶ 68. She claims she was thereafter denied interviews for, or was not hired into, various positions as further acts of retaliation for complaining about Judge Castro. *See id.* ¶¶ 76, 102-104, 106, 114-115, 137. She further alleges that Defendants "continue to pay Plaintiff at pay grade JG-29" as another act of "retaliation for complaining about Judge Castro." *Id.* ¶ 138.

In September 2019, Plaintiff allegedly "filed a written complaint of retaliation against Judge Doran and the Seventh Judicial District Executive with the UCS Office of the Inspector General." *Id.* ¶ 141. Constantino-Gleason alleges that Defendant Campbell "served as Managing Inspector General for Bias Matters in the UCS Office of Inspector General, and was a policy maker for administrative matters in the UCS Office of Inspector General." *Id.* ¶ 16.

According to Constantino-Gleason, "the Office of the Managing Inspector General for Bias Matters within the UCS Office of the Inspector General is charged with acknowledging receipt of complaints, investigating allegations of discrimination and retaliation that affect the UCS workplace or affect the terms and conditions of employment of UCS personnel, and preparing a report." *Id.* ¶ 143. However, she claims that this office "never acknowledged receipt of Plaintiff's September 2019 complaint." *Id.* ¶ 144. She further claims that "[n]o investigation was ever conducted by the UCS Inspector General into Plaintiff's complaint, and Plaintiff has never received any information from the UCS Inspector General concerning her complaint." *Id.* ¶ 149. Plaintiff claims that Campbell "deprived

Plaintiff of her federal rights by failing to acknowledge or investigate the complaint that Plaintiff filed with the UCS Office of Inspector General." *Id.* ¶ 151.

According to Constantino-Gleason, Defendants' "acts of retaliation have been performed with malice or reckless indifference to" her "protected civil rights." *Id.* ¶ 157.  She alleges humiliation, emotional distress, physical illness, economic hardship, reputational damage, and various types of monetary losses "[b]ecause of Defendants' actions." *Id.* ¶ 159.

The Amended Complaint sets forth five causes of action: (1) Retaliation in violation of Title VII against UCS and OCA; (2) Retaliation in violation of the NYHRL against Doran, Johnson, and Campbell; (3) Aiding and abetting retaliation in violation of the NYHRL against Doran, Johnson, and Campbell; (4) Deprivation of rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution in violation of Section 1983 against Doran, Johnson, and Campbell; and (5) Deprivation of rights under the Right to Petition Clause of the First Amendment to the United States Constitution in violation of Section 1983 against Campbell. *Id.* ¶¶ 161-170.  Constantino-Gleason seeks declarative and injunctive relief, as well as monetary damages.

## DISCUSSION

Defendants seek "dismissal of the second, third, fourth and fifth causes of action in Plaintiff's Amended Complaint and her request for punitive damages." Dkt. 13-6 at 7.  They argue that (1) all claims against Doran, Johnson, and Campbell in their individual capacities that seek money damages are barred based

on judicial or quasi-judicial immunity; (2) all claims against Doran, Johnson, and Campbell in their official capacities that seek monetary and non-prospective injunctive and declaratory relief are barred by Eleventh Amendment sovereign immunity;[4] (3) some of Plaintiff's claims are precluded by an Article 78 proceeding Plaintiff commenced in state court; and (4) Plaintiff may not recover punitive damages on her Title VII claim. *See* Dkt. 13-6.

Constantino-Gleason argues that "Defendants have failed to establish a basis for dismissal of any portion" of the Amended Complaint, as "[e]ach of Defendants' four arguments" involves "the application of a mistaken version of the facts to an inappropriate legal standard." Dkt. 16 at 6.

For the reasons discussed below, the Court:

- DENIES Defendants' motion to the extent it seeks dismissal of any claim on grounds of judicial or quasi-judicial immunity;

- GRANTS Defendants' motion to the extent it seeks dismissal, based on Eleventh Amendment Immunity, of Plaintiff's claims against Doran, Johnson, and Campbell in their official capacities for monetary damages, and injunctive and declaratory relief that is not prospective;

- GRANTS Defendants' motion, to the extent it seeks dismissal, based on the doctrine of *res judicata*, of Plaintiff's Fourth and Fifth causes of

---

[4] Defendants further argue that "Plaintiff's claims under the NYSHRL against OCA and UCS are also barred and should be dismissed." Dkt. 19 at 8.

action against Doran, Johnson, and Campbell in their official
capacities for injunctive and declaratory relief; and

- DENIES Defendants' motion to the extent it seeks dismissal of
Plaintiff's request for punitive damages.

In sum, Plaintiff's official capacity claims against Doran, Johnson, and
Campbell for monetary damages and injunctive and declaratory relief that is not
prospective are dismissed based on 11th Amendment immunity. And as to
Plaintiff's Section 1983 claims only, Plaintiff's official capacity claims for all forms
of injunctive or declaratory relief are dismissed under the doctrine of *res judicata*.
Plaintiff's remaining claims may proceed.

## I.    STANDARDS OF REVIEW

A case is properly dismissed for lack of subject matter jurisdiction under Rule
12(b)(1) when "the district court lacks the statutory or constitutional power to
adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); Fed. R.
Civ. P. 12(b)(1). A plaintiff asserting subject matter jurisdiction "has the burden of
proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at
113.

On a Rule 12(b)(6) motion, "the court's task is to assess the legal feasibility of
the complaint." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). In doing
so, the Court "must take the facts alleged in the complaint as true, drawing all
reasonable inferences in [the plaintiff's] favor." *In re NYSE Specialists Sec. Litig.*,
503 F.3d 89, 91 (2d Cir. 2007). To survive a Rule 12(b)(6) motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to "state a claim

to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Courts "are not bound to accept as true a legal conclusion couched as a factual

allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Id.*

This standard demands "more than a sheer possibility that a defendant has

acted unlawfully." *Id.* Plausibility "depends on a host of considerations: the full

factual picture presented by the complaint, the particular cause of action and its

elements, and the existence of alternative explanations so obvious that they render

plaintiff's inferences unreasonable." *Fink v. Time Warner Cable*, 714 F.3d 739, 741

(2d Cir. 2013) (quoting *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d

Cir. 2011)).

## II.   JUDICIAL/QUASI-JUDICIAL IMMUNITY

Defendants argue that Doran and Johnson were "acting in their judicial

capacities" when they "engaged in the wrongful conduct" alleged in the Amended

Complaint and, therefore, are "entitled to absolute judicial immunity from

Plaintiff's causes of action against them in their individual capacities that seek

money damages." Dkt. 13-6 at 14. They further argue that Doran and Johnson are

entitled to "quasi-judicial immunity," and that Campbell, "in her role as Managing

IG for Bias Matters," is "entitled to quasi-judicial immunity." *Id.* at 15. For the

reasons discussed below, this portion of Defendants' motion is denied.

Issues of "absolute immunity are properly considered under Rule 12(b)(1)."
*Marshall v. New York State Pub. High Sch. Athletic Ass'n, Inc.*, 374 F. Supp. 3d 276,
287 (W.D.N.Y. 2019). The "party 'asserting immunity bears the burden of
demonstrating its entitlement to it.'" *Id.* at 288 (quoting *In re NYSE Specialists*,
503 F.3d at 96). The Second Circuit has advised that absolute immunity is of a
"rare and exceptional character." *City of Providence, Rhode Island v. Bats Glob.
Mkts., Inc.*, 878 F.3d 36, 46 (2d Cir. 2017) (citation omitted).

It is "well settled that judges generally have absolute immunity from suits for
money damages for their judicial actions." *Shtrauch v. Dowd*, 651 F. App'x 72, 73
(2d Cir. 2016) (quoting *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009)). Judges
are "not, however, absolutely immune from liability for nonjudicial actions, *i.e.,*
actions not taken in the judge's judicial capacity." *Id.* (internal citation omitted).
The Second Circuit "employ[s] 'a "functional" approach' to determine whether an act
is 'judicial' because judicial 'immunity is justified and defined by the *functions* it
protects and serves, not by the person to whom it attaches.'" *Id.* (quoting *Forrester
v. White*, 484 U.S. 219, 224, 227 (1988)).

The "factors determining whether an act by a judge is a "judicial" one relate
to the nature of the act itself, *i.e.,* whether it is a function normally performed by a
judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge
in his judicial capacity." *Id.* (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)).
Generally, "acts arising out of, or related to, individual cases before the judge are
considered judicial in nature." *Id.* (quoting *Bliven*, 579 F.3d at 210). But

"[a]dministrative decisions, even though they may be essential to the very functioning of the courts, have not similarly been regarded as judicial acts." *Id.* (quoting *Forrester*, 484 U.S. at 228).

In addition, the Supreme Court "has extended absolute immunity to certain others" who perform "quasi-judicial" functions. *Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 365 (S.D.N.Y. 2011) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)). The "Second Circuit has identified two situations in which this immunity applies." *Saint-Guillen v. United States*, 657 F. Supp. 2d 376, 380 (E.D.N.Y. 2009).

First, an individual "may be afforded the absolute immunity ordinarily accorded judges acting within the scope of their jurisdictions if his role is 'functionally comparable to that of a judge.'" *Mitchell v. Fishbein*, 377 F.3d 157, 172 (2d Cir. 2004) (quoting *Butz v. Economou*, 438 U.S. 478, 513 (1978)). For example, the Supreme Court has concluded that "the role of the modern federal hearing examiner or administrative law judge within this framework is 'functionally comparable' to that of a judge." *Butz*, 438 U.S. at 513. In "deciding whether an actor is entitled to absolute immunity on the basis that his role is analogous to that of a judge," the Second Circuit "evaluate[s] the challenged proceedings in light of the 'characteristics of the judicial process' set forth in *Butz v. Economou*." *Mitchell*, 377 F.3d at 172.

> In *Butz* the 'Court mentioned the following factors, among others, as characteristic of the judicial process and to be considered in determining absolute as contrasted with qualified immunity: [1] the need to assure that the individual can perform his functions without harassment or

intimidation; [2] the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; [3] insulation from political influence; [4] the importance of precedent; [5] the adversary nature of the process; and [6] the correctability of error on appeal.'

*Id.* at 172-73 (quoting *Cleavinger*, 474 U.S. at 201–02).

Second, immunity applies if an individual's "acts are integrally related to an ongoing judicial proceeding." *Id.* at 172 (citing *Scotto v. Almenas*, 143 F.3d 105, 111–12 (2d Cir. 1998)). For example, the Second Circuit granted absolute immunity to federal probation officers for their preparation of presentence reports because, "in preparing presentence reports, a federal probation officer acts as an arm of the court . . . ." *Dorman v. Higgins*, 821 F.2d 133, 137 (2d Cir. 1987).

The "more distant a function is from the judicial process, [however,] the less likely absolute immunity will attach." *Scotto*, 143 F.3d at 111 (quoting *Snell v. Tunnell*, 920 F.2d 673, 687 (10th Cir. 1990)) (declining to extend absolute immunity to parole officer for preparing parole violation report and recommending that an arrest warrant issue because these actions were "not performed under judicial direction and occurred before the initiation of parole revocation proceedings").

Here, Defendants argue that Doran and Johnson are entitled to judicial *and* quasi-judicial immunity because "assignment of law clerks to Judges is clearly an act that is crucial to the case-deciding process." *See* Dkt. 13-6 at 14, 16. They further argue that Campbell is entitled to quasi-judicial immunity because "determinations regarding whether to investigate claims of bias within the court

system" are "functionable comparable" to those of a judge. *See id.* at 16. The caselaw does not support Defendants' immunity arguments.

### A. Doran and Johnson

Doran and Johnson are not entitled to absolute judicial immunity because the alleged retaliatory acts described in the Amended Complaint do not arise out of any case or cases before Doran or Johnson. Rather, they have to do with Plaintiff's work assignments, pay, or other personnel matters relating to her employment at UCS. *See* Dkt. 11, ¶¶ 64-68 (Doran and Johnson allegedly assigned Plaintiff to work for Judge Lopez, whereby reducing her salary and benefits, because "she complained about working in a hostile environment for Judge Castro based on her sex"); ¶ 76 (Defendants "declined to assign Plaintiff" to work for certain judges "in retaliation for complaining about Judge Castro"); ¶¶ 102-104, 106, 114-115, 138, 154 (Plaintiff was not interviewed or hired into certain positions, and thus retained the same pay rate, "in retaliation for complaining about Judge Castro").

The alleged decisions at issue, therefore, do not "implicate the power of the court—only the authority of the judge[s]" to make "employment decision[s]" with respect to Plaintiff. *See McMillan v. Svetanoff*, 793 F.2d 149, 151 (7th Cir. 1986). While the assignment of law clerks to judges may be "essential to the very functioning of the courts," *Bliven*, 579 F.3d at 210, it is an *administrative function*, rather than a "truly judicial act[]" for which absolute judicial immunity would be appropriate. *See Forrester*, 484 U.S. at 229 (declining to extend immunity to a judge who fired a probation officer employee in violation of Title VII, reasoning that the

judge was acting in an administrative capacity when he fired the employee—which could not be meaningfully distinguished from anyone else who makes employment decisions); *McMillan*, 793 F.2d at 151 (concluding that a judge's act in firing a court reporter was not protected by judicial immunity); *J.L.D. v. Est. of Gannon*, No. 15-386(KM), 2016 WL 8677315, at *16 (declining to extend judicial immunity to judge whose law clerk alleged that he "spread a false rumor about him and retaliated for criticism" because "this was not an adjudicator/litigant relationship; it was an employer/employee relationship"); *Goodwin v. Cir. Ct. of St. Louis Cnty., Mo.*, 729 F.2d 541, 549 (8th Cir. 1984) (concluding that the "decision of whom to retain as a hearing officer is not an official judicial act" but, rather, "an administrative personnel decision").[5]

For these reasons, Defendants' motion is denied to the extent it seeks dismissal of claims against Doran and Johnson on grounds of absolute judicial immunity.[6]

---

[5] The cases Defendants cite in support of their argument for judicial immunity do not implicate personnel decisions made by a judge with respect to a plaintiff-employee. *See* Dkt. 13-6 at 14 (citing *Neroni v. Coccoma*, No. 3:13-CV-1340, 2014 WL 2532482 (N.D.N.Y. June 5, 2014), *aff'd*, 591 F. App'x 28 (2d Cir. 2015); *Koziol v. Peters*, No. 12-CV-823, 2012 WL 4854589, at *1 (N.D.N.Y. Oct. 11, 2012); *Zahl v. Kosovsky*, No. 08-CV-8308, 2011 WL 779784 (S.D.N.Y. Mar. 3, 2011), *aff'd*, 471 F. App'x 34 (2d Cir. 2012)).

[6] It is also denied to the extent it asserts quasi-judicial immunity with respect to Doran and Johnson, as quasi-judicial immunity only applies to "*non-judicial officers* when they perform judicial functions." *See Tomlins*, 812 F. Supp. 2d at 365 (emphasis added).

**B. Campbell**

Campbell is not entitled to quasi-judicial immunity. She fails to demonstrate that her role is "'functionally comparable' to that of a judge." *See Mitchell*, 377 F.3d at 172 (citation omitted). Plaintiff alleges that Campbell "served as Managing Inspector General for Bias Matters," Dkt. 11 ¶ 16, and that the "Office of the Managing Inspector General for Bias Matters" is "charged with acknowledging receipt of complaints, investigating allegations of discrimination and retaliation that affect the UCS workplace or affect the terms and conditions of employment of UCS personnel, and preparing a report." Dkt. 11 ¶ 143. But the Amended Complaint does not contain sufficient alleged facts to demonstrate that the process employed by the Office of the Managing Inspector General for Bias Matters mirrors a judicial process, *see Mitchell*, 377 F.3d at 157,[7] or that Campbell's role in that process is analogous to that of a judge.

---

[7] Campbell's reliance on *Finn v. Anderson*, 592 F. App'x 16, 18 (2d Cir. 2014), and *Anonymous v. Ass'n of the Bar of City of New York*, 515 F.2d 427, 433 (2d Cir. 1975), is misplaced. In *Finn,* the Second Circuit cited *Anonymous* for the proposition that the court "has consistently extended such 'quasi-judicial' immunity to investigators with attorney grievance committees such as" the defendant." 592 F. App'x at 19. In *Anonymous*, however, the court explained that the rules of the court "empower[] the Grievance Committee" to "conduct preliminary investigations of professional misconduct and to issue subpoenas *in the name of the presiding justice.* The Committee has an office and a staff to perform this function as an arm of the court, much as a special master appointed in the federal court" (emphasis added). Here, there is nothing to suggest that the Office of the Managing Inspector General for Bias Matters shared these characteristics.

Nor were Campbell's alleged acts "integrally related to an ongoing judicial proceeding." *See Mitchell*, 377 F.3d at 147. Like with Doran and Johnson, the alleged decisions at issue implicate power to resolve personnel issues, not adjudicate cases before the court. Accordingly, Campbell's duties are "purely ministerial and administrative" such that the protection of quasi-judicial immunity is not appropriate. *Quitoriano v. Raff & Becker, LLP*, 675 F. Supp. 2d 444, 450 (S.D.N.Y. 2009) (quoting *Antoine v. Byers & Anderson*, 508 U.S. 429, 437n.11 (1993)).

For these reasons, Defendants' motion is denied to the extent it seeks dismissal of claims against Doran, Johnson, or Campbell on grounds of absolute judicial or quasi-judicial immunity.

## III.   ELEVENTH AMENDMENT IMMUNITY

Defendants argue that "Plaintiff's official capacity claims against Defendants Doran, Johnson, and Campbell that seek monetary and non-prospective injunctive and declaratory relief are barred by Eleventh Amendment sovereign immunity." Dkt. 13-6 at 17. Plaintiff responds that, because the Amended Complaint seeks "prospective relief from the retaliation she continues to endure from Defendants as well as the continuing violation of her constitutional rights," Defendants' motion should be denied. Dkt. 16 at 17.[8] For the reasons discussed below, Plaintiff's claims

---

[8] In their reply, Defendants raise an additional argument that "Plaintiff's claims under the NYSHRL against OCA and UCS are also barred and should be dismissed." Dkt. 19 at 8. The Amended Complaint does not assert any claim against OCA or UCS under the NYHRL. *See* Dkt. 11 ¶¶ 161-170 (asserting claims against UCS and OCA only under Title VII). Therefore, this portion of Defendants'

against Doran, Johnson, and Campbell—in their official capacities—are dismissed to the extent they seek monetary damages and injunctive and declaratory relief that is not prospective.[9]

A "motion to dismiss for sovereign immunity under the Eleventh Amendment is properly brought pursuant to Rule 12(b)(1)." *Long Island Pure Water Ltd. v. Cuomo*, 375 F. Supp. 3d 209, 215 (E.D.N.Y. 2019). The Eleventh Amendment "precludes suits against states and their agencies unless the state expressly waives its immunity or Congress abrogates that immunity." *Hahn v. New York*, 825 F. App'x 53, 54 (2d Cir. 2020) (citations omitted). New York has not waived its immunity from Section 1983 claims in federal court. *See Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010) ("It is well-established that New York has not consented to § 1983 suits in federal court.") (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38–40 (2d Cir. 1977)). Nor has Congress abrogated

---

motion is denied. *See Kearney v. N.Y.S. DOCS*, No. 10-CV-6202, 2012 WL 5197678, at *4 (W.D.N.Y. Oct. 19, 2012) ("The individual Defendants' motion is denied as unnecessary insofar as it is directed at the ADA claim, since that claim is not asserted against them.").

[9] The Court notes that the Amended Complaint could be construed as seeking only injunctive relief with respect to claims against Doran, Johnson, and Campbell in their official capacities. *See* Dkt. 11 ¶ 10 ("Doran is sued in his individual capacity and, for injunctive relief, in his official capacity."); ¶ 13 ("Johnson is sued in her individual capacity and, for injunctive relief only, in her official capacity."); ¶ 16 ("Campbell is sued in her individual capacity and, for injunctive relief only, in her official capacity."). Plaintiff does not raise this point in her opposition. *See generally* Dkt. 16. Out of an abundance of caution, the Court elects to address Defendants' argument that "Plaintiff's official capacity claims against Defendants Doran, Johnson and Campbell that seek monetary and non-prospective injunctive and declaratory relief are barred by Eleventh Amendment sovereign immunity." Dkt. 13-6 at 17.

state immunity for claims under Section 1983. *See, e.g., Dube v. State Univ. of N.Y.,* 900 F.2d 587, 594 (2d Cir. 1990) (citing *Quern v. Jordan,* 440 U.S. 332, 340–42 (1979)). In addition, "New York has not waived its Eleventh Amendment immunity for NYHRL suits in federal courts." *Widomski v. State Univ. of New York (SUNY) at Orange,* 933 F. Supp. 2d 534, 554n.16 (S.D.N.Y. 2013), *aff'd,* 748 F.3d 471 (2d Cir. 2014). Further, "[the] Court has found no such law" to suggest that "any congressional statute intends to abrogate the immunity of New York State with respect to the NYSHRL." *Winokur v. Off. of Ct. Admin.,* 190 F. Supp. 2d 444, 451 (E.D.N.Y. 2002).

Eleventh Amendment immunity "extends to state officials sued in their official capacities . . . ." *Brown v. New York,* 975 F. Supp. 2d 209, 222 (N.D.N.Y. 2013) (citing *Kentucky v. Graham,* 473 U.S. 159, 166 (1985)). But "the applicability of the Eleventh Amendment bar" with respect to official capacity claims "depends on the form of relief sought." *Lee v. Dep't of Child. & Fams.,* 939 F. Supp. 2d 160, 165–66 (D. Conn. 2013). More specifically, Eleventh Amendment immunity "shields states from claims for money damages and other forms of retrospective relief." *Kelsey v. Sherman,* No. 22 CV 1934 (VB), 2022 WL 2441193, at *2 (S.D.N.Y. July 5, 2022) (citing *Green v. Mansour,* 474 U.S. 64, 72–74 (1985)). This includes "judgments against state officers declaring that they violated federal law in the past." *Lee,* 939 F. Supp. 2d at 165–66 (quoting *P.R. Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146 (1993)). Likewise, claims for retroactive "injunctive relief against a state are barred by the Eleventh Amendment." *Bonilla*

*v. Semple*, No. 3:15-CV-1614 (VAB), 2016 WL 4582038, at *3 (D. Conn. Sept. 1, 2016) (citing *Edelman v. Jordan*, 415 U.S. 651, 663-68 (1974)).

Based on this standard, Plaintiff's official capacity claims against Doran, Johnson, and Campbell for monetary damages are dismissed. *See Kelsey*, No. 22 CV 1934 (VB), 2022 WL 2441193, at *2. Further, to the extent Plaintiff requests injunctive relief that is not prospective with respect to Doran, Johnson, or Campbell in their official capacities, that request is dismissed. *See Bonilla*, No. 3:15-CV-1614 (VAB), 2016 WL 4582038. Lastly, to the extent directed at Doran, Johnson, and Campbell in their official capacities, Plaintiff's request that the Court "declare that Defendants unlawfully retaliated against Plaintiff on the basis of her opposition to sex discrimination," Dkt. 11 at 22 ¶ a, is dismissed. *See P.R. Aqueduct and Sewer Auth.*, 506 U.S. at 146.

## IV.   CLAIM PRECLUSION

Defendants argue that some of Plaintiff's claims are barred under the doctrine of *res judicata*. *See* Dkt. 13-6 at 17.[10] In 2020, Plaintiff allegedly "brought

---

[10] It is unclear precisely which claims Defendants are moving against on *res judicata* grounds. *Compare* Dkt. 13-6 at 7 ("Plaintiff's claims against Defendants Doran, Johnson and Porter-Campbell in their official capacities seeking declaratory and injunctive relief are precluded by *res judicata*"), *with id.* at 17 ("These [Article 78] proceedings preclude Plaintiff's subsequent federal claims in this action against all Defendants that seek declaratory and injunctive relief because those claims were predicated on the same transaction(s) out of which her Article 78 proceeding arose."), *and* Dkt. 19 at 10 ("The remaining official capacity § 1983 claims against the individual defendants that seek prospective injunctive and declaratory relief for alleged constitutional violations could have been raised in Plaintiff's Article 78 proceeding."). The Court "must draw all reasonable inferences and resolve all ambiguities in the nonmoving party's favor . . . ." *Beare v. Millington*, No. 2007 CV-3391(ERK)(MDG), 2009 WL 10706535, at *1 (E.D.N.Y. Aug. 20, 2009). As such, the

an Article 78 proceeding in NYS Supreme Court, Onondaga County" predicated on the same "operative facts" that give rise to her claims in this action. *See id.* According to Defendants, the court denied Plaintiff's Article 78 petition. *See id.* Plaintiff allegedly "moved to reargue" the denial to no avail, and then appealed "to the Appellate Division, Fourth Department" where "the denial was affirmed." *Id.* These proceedings, Defendants claim, "preclude Plaintiff's subsequent federal claims in this action" because those claims are "predicated on the same transaction(s) out of which her Article 78 proceeding arose." *Id.* Plaintiff argues that *res judicata* is no bar. *See* Dkt. 16 at 19. For the following reasons, Plaintiff's Fourth and Fifth causes of action are dismissed, based on *res judicata*, to the extent they assert official capacity claims against Doran, Johnson, or Campbell for injunctive or declaratory relief.

The "doctrine of claim preclusion, or *res judicata*, bars the subsequent litigation of any claims that were or could have been raised in a prior action." *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 128 (2d Cir. 2015). A court may properly "consider a *res judicata* defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014). On a "motion

---

Court narrowly construes Defendants' motion as seeking dismissal of the Fourth and Fifth causes of action—which assert Section 1983 claims against Johnson, Campbell and/or Doran—to the extent they assert official capacity claims for injunctive or declaratory relief.

to dismiss, a court may take judicial notice of related lawsuits, judicial decisions, and litigation filings." *Edwardo v. Roman Cath. Bishop of Providence*, 579 F. Supp. 3d 456, 465n.7 (S.D.N.Y. 2022), *aff'd*, 66 F.4th 69 (2d Cir. 2023).[11]

As a "threshold matter, in order for principles of *res judicata* to apply, the prior decision must be 'final.'" *L-Tec Elecs. Corp. v. Cougar Elec. Organizaiton, Inc.*, No. 97 CV 4303, 1998 WL 960302, at *2 (E.D.N.Y. Dec. 14, 1998), *aff'd sub nom. L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85 (2d Cir. 1999). Here, the trial court's denial of Plaintiff's Article 78 Petition was a "final" judgment. *See Cantore v. City of New York,* No. 16 CIV. 2748 (PGG), 2017 WL 11501442, at *9 (S.D.N.Y. Sept. 15, 2017) (concluding that a New York State Supreme Court's dismissal of an Article 78 petition "plainly constitutes a final judgment on the merits . . .") (internal citation omitted).

The Court rejects Plaintiff's argument that the Article 78 proceeding has not been "finally determined on the merits" due to plaintiff seeking "further judicial review of that Order, with further proceedings pending at present." *See* Dkt. 16 at 11. Under "New York law, the pendency of an appeal does not deprive a challenged judgment of preclusive effect." *Arnold v. Beth Abraham Health Servs., Inc.*, No. 09 CIV. 6049 (DLC), 2009 WL 5171736, at *4 (S.D.N.Y. Dec. 30, 2009) (concluding that "the fact that the plaintiff has sought review of the Article 78 court's decision before

---

[11] In support of their motion to dismiss, Defendants submit copies of various judicial decisions and litigation filings related to Plaintiff's Article 78 proceeding. *See* Dkt. 13-1 through 13-5.

the Appellate Division, where his appeal remains pending, does not affect the application of *res judicata*"); *DiSorbo v. Hoy*, 343 F.3d 172, 183 (2d Cir. 2003) (lending preclusive effect to a New York Supreme Court judgment notwithstanding appeal pending before the Appellate Division).[12]

Where, as here, the threshold requirement is met. *res judicata* applies if: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Bey v. City of New York*, 454 F. App'x 1, 4–5 (2d Cir. 2011) (citation omitted).

Here, all three elements are met. First, it is "well-settled that Article 78 proceedings constitute 'an adjudication on the merits' for purposes of a *res judicata* analysis." *Miller v. City of New York*, No. 17 CV 4198 (RJD), 2019 WL 2164100, at *2 (E.D.N.Y. May 10, 2019). Further, there is no dispute that Constantino-Gleason was the petitioner in the Article 78 proceeding.

Finally, Plaintiff's constitutional claims "could have been[] raised in the prior action." *See Bey*, 454 F. App'x at 5. These claims arise out of the same alleged facts relating to Plaintiff's employment at UCS that underly the Article 78 Petition. *Compare* Dkt. 11 at 4-20 *with* Dkt. 13-2. Plaintiff could have asserted violation(s) of her constitutional rights in the Article 78 proceeding based on these alleged facts.

---

[12] In any event, after Constantino-Gleason filed her opposing brief in this action, the Supreme Court of the State of New York, Fourth Judicial Department denied her motion "for reargument or leave to appeal to the Court of Appeals." *See Constantino-Gleason v. Unified Ct. Sys.*, 199 A.D.3d 1407 (4th Dep't 2021).

*See Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996) ("Constitutional issues can be decided in Article 78 proceedings."). She did not do so. *See* Dkt. 13-2. Plaintiff "may not escape the effects of *res judicata* by 'splitting [her] claim into various suits, based on different legal theories.'" *Karamoko v. N.Y.C. Hous. Auth.*, 170 F. Supp. 2d 372, 377 (S.D.N.Y. 2001) (quoting *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 110 (2d Cir. 2000)) (cleaned up).

Indeed, it is "the facts surrounding the transaction or occurrence which operate to constitute the cause of action [for *res judicata* purposes], not the legal theory upon which a litigant relies." *Id.* (quoting *Saud v. Bank of N.Y.*, 929 F.2d 916, 919 (2d Cir. 1991)). *See also Brooks v. Giuliani*, 84 F.3d 1454, 1463 (2d Cir. 1996) ("In New York, once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.") (citation omitted) (emphasis added).[13]

For these reasons, Plaintiff's Fourth and Fifth causes of action are dismissed to the extent they assert official capacity claims against Doran, Johnson, or Campbell for injunctive or declaratory relief. *See Corbett v. City of New York*, No.

---

[13] The Court rejects Plaintiff's argument that "the Article 78 proceeding is not based at all upon the same causes of action as this civil rights action." Dkt. 16 at 22. *Res judicata* "is not limited to only claims that were actually litigated." *Merced v. Ponte*, No. 17-CV-4918 (KAM), 2019 WL 1208791, at *9 (E.D.N.Y. Mar. 13, 2019), *aff'd*, 807 F. App'x 127 (2d Cir. 2020). Rather, "it bars all legal claims that a party *could have raised* in the prior litigation." *Id.* (emphasis added).

18 CIV. 7022 (KPF), 2019 WL 2502056, at *5 (S.D.N.Y. June 17, 2019), *aff'd*, 816 F. App'x 551 (2d Cir. 2020) ("To the extent the Complaint raises new claims—specifically, violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment—those claims could have been raised in the prior [Article 78] litigation and are therefore also barred by the doctrine of *res judicata*.").[11]

## V.   PUNITIVE DAMAGES

Defendants argue that Constantino-Gleason may not recover punitive damages with respect to her "Title VII retaliation claim against OCA and UCS" because "42 U.S.C. § 1981a(b)(1) specifically excludes government agencies from responsibility of punitive damage awards in Title VII discrimination actions." Dkt. 13-6 at 21. Defendants' motion is denied as premature.

Punitive damages "are a form of damages, and not an independent cause of action." *Belyea v. City of Glen Cove*, No. 20-CV-5675 (MKB), 2022 WL 3586559, at *30 (E.D.N.Y. Aug. 22, 2022) (internal citation omitted). Therefore, "a motion to dismiss a prayer for relief in the form of punitive damages is 'procedurally premature.'" *Id.* (citation omitted). Accordingly, courts "routinely deny motions to dismiss requests for punitive damages as procedurally improper because such a request is not a cause of action subject to dismissal." *City Nat'l Specialty Co. v. Ashley Furniture Indus., LLC*, No. 21-CV-05521(EK)(LGD), 2022 WL 2918121, at *3 (E.D.N.Y. July 21, 2022). *See, e.g., Bernardi v. N.Y. State Dep't of Corr.*, No. 19-CV-

---

[14] Because "money damages are not available in Article 78 proceedings, *res judicata* will not bar" Plaintiff's "section 1983 claims for money damages." *Miller*, No. 17-CV-41982019 WL 2164100, at *2.

11867, 2021 WL 1999159, at *14 (S.D.N.Y. May 19, 2021) (denying motion to dismiss as premature with respect to plaintiff's punitive damages claims); *Doe v. AR*, No. 21-CV-06353, 2022 WL 1624081, at *18 (W.D.N.Y. May 23, 2022) (same).

Here, the parties are at the pleading stage and no discovery has occurred. Therefore, Defendants' motion is denied as premature.

## CONCLUSION

For the reasons discussed above, it is:

ORDERED that Defendants' motion (Dkt. 13) is GRANTED in part and DENIED in part. Plaintiff's official capacity claims against Doran, Johnson, and Campbell for monetary damages, and injunctive and declaratory relief that is not prospective, are dismissed. Further, as to Plaintiff's Section 1983 claims only, Plaintiff's official capacity claims for *all* forms of injunctive or declaratory relief are dismissed. All dismissed claims are without leave to amend. *See Azkour v. Bowery Residents' Comm., Inc.,* 646 F. App'x 40, 44 (2d Cir. 2016) ("A district court need not grant leave to amend when doing so would be 'futile.'"). All of Plaintiff's remaining claims may proceed.

SO ORDERED.

Dated:     June 16, 2023
            Buffalo, New York

JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE